UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DWAYNE L. SCHOMER, et al.,<br><br>　　　　　　　　Plaintiffs,<br><br>　v.<br><br>SHERIFF AITOR NARVAIZA, et al.,<br><br>　　　　　　　　Defendants. | Case No. 3:23-cv-00390-ART-CSD<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS (ECF NO. 35) |

Plaintiffs Dwayne L. Schomer and Braylen Schomer bring this action against Defendants alleging claims related to the wrongful death of Keaton M. Schomer. (ECF No. 29-1.) Before the Court is a motion to dismiss filed by Medallus & Vacharothone LTD, Dr. Rachot Vacharothone, Bailey Powell, Geoffrey Fisher, Mercedes Chochrell, and Letiscya Chacon ("Medallus Defendants"). (ECF No. 35.) For the following reasons, the Court denies the motion to dismiss.

I.   **BACKGROUND**

　　**A. Factual Allegations**

Plaintiffs allege the following facts relevant to this motion. Decedent Keaton Schomer was housed at Elko County Jail on August 15, 2021. (ECF No. 29-1 at ¶ 34.) Medallus Medical provides medical care and services to those in custody at the jail. (*Id.* at ¶ 33.) On August 15, Keaton made calls from the jail saying that he was sick and defecating everywhere. (*Id.* at ¶ 35-36.) On August 17, Keaton made a call saying that he was about to die and could not eat or drink. (*Id.* at ¶ 37.) Beginning on August 23, Keaton had severely chapped lips, repeatedly defecated himself, and asked for water. (*Id.* at ¶ 41.) On August 23, Keaton told a Medallus employee that he had vomited blood. (*Id.* at ¶ 42.) On August 27, Keaton was transported to the jail's medical room. (*Id.* at ¶ 44.) On August 29, Keaton was transported to the medical room in a wheelchair, where

he requested to be sent to hospital and was given an IV. (*Id.* at ¶ 46.) On September 5, 2021, Medallus staff finally decided that Keaton's condition had deteriorated to the point that he needed to be transferred to hospital. (*Id.* at ¶ 53.) At 12:12 p.m. that day, Defendant Powell informed an officer that Keaton "did not look well." (*Id.* at ¶ 54.) At 1:00 p.m., Powell advised the officer that Keaton "needed to be taken to the hospital per Dr. Rachot." (*Id.* at ¶ 56.) At 1:43 p.m. the Elko Fire Department arrived at the jail and began CPR and lifesaving measures on Keaton. (*Id.* at ¶ 58-59.) Medallus Defendants did not attempt to perform CPR or other lifesaving measures on Keaton prior to the fire department's arrival. (*Id.* at ¶ 60.) Medallus Defendants were laughing and joking while Keaton lay dying on the floor in the jail. (*Id.* at ¶ 63.) Keaton died that day at age 26. (*Id.* at ¶ 66.) During his 13 days in the jail, Keaton lost approximately 60 pounds. (*Id.* at ¶ 67.) Keaton's cause of death was complications of dehydration. (*Id.* at ¶ 68.)

**B. Claims**

Plaintiffs initiated this action on June 2, 2023. (ECF No. 1.) In their first amended complaint, Plaintiffs allege the following claims against Medallus Defendants:

Count 1: deliberate indifference to serious medical need under 42 U.S.C. § 1983 (Fourteenth Amendment);

Count 2: deliberate indifference to serious medical need under 42 U.S.C. § 1983 (Fourteenth Amendment Monell liability);

Count 3: loss of familial association under 42 U.S.C. § 1983 (Fourteenth Amendment);

Count 6: professional negligence;

Count 8: negligent hiring/training/supervision; and

Count 11: intentional infliction of emotional distress.

(ECF No. 29-1.) Medallus Defendants move to dismiss all claims. (ECF No. 35.)

## II. STANDARD OF REVIEW

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if the plaintiff clearly cannot prove any set of facts in support of the claim that would entitle them to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the Court takes as true all allegations of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels, conclusions, or a formulaic recitation of a claim's elements. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## III. DISCUSSION

Defendants argue that: (1) Plaintiffs' medical negligence claims are time-barred under NRS 41A.097; (2) Plaintiffs' medical negligence claims against Dr. Vacharothone are not supported by an affidavit as required by NRS 41A.071; and (3) Plaintiffs' constitutional claims do not allege a facially plausible claim for liability. (ECF No. 35.)

### A. Medical Negligence Claims – Statute of Limitations

Defendants move to dismiss Plaintiffs' medical negligence claims as time-barred under Nevada's one-year statute of limitations for medical negligence claims. (ECF No. 35 at 5.)

Under Nevada state law, "an action for injury or death against a provider of health care may not be commenced more than 3 years after the date of injury or 1 year after the plaintiff discovers or through the use of reasonable diligence should have discovered the injury, whichever occurs first." NRS 41A.097(2). A

plaintiff "discovers his legal injury when he knows or, through the use of reasonable diligence, should have known of facts that would put a reasonable person on inquiry notice of his cause of action." *Massey v. Litton*, 669 P.2d 248, 252 (1983). "A person is put on 'inquiry notice' when he or she should have known of facts that 'would lead an ordinarily prudent person to investigate the matter further.'" *Winn v. Sunrise Hosp. & Medical Center*, 277 P.3d 458, 462 (Nev. 2012) (quoting *Black's Law Dictionary* 1165 (9th ed. 2009)). "NRS 41A.097(2)'s discovery date may be determined as a matter of law only when the evidence irrefutably demonstrates that a plaintiff has been put on inquiry notice." *Id.*

Parties dispute when Plaintiffs discovered or should have discovered the injury. Defendants argue that Plaintiffs discovered the injury on September 6, 2021—the day after Keaton's death—when they sent a litigation and preservation hold letter. (ECF No. 35 at 6.) Plaintiffs clarify that the letter was sent to the jail, not to medical defendants, and argue that they did not discover the injury until they received Keaton's medical records, approximately ten months later, on July 5, 2022. (ECF No. 37 at 7.) Plaintiffs point to the Nevada Supreme Court's finding in *Winn v. Sunrise Hospital and Medical Center* that a father was not on inquiry notice for statute of limitations purposes until he received his son's medical records. 277 P.3d 458, 463 (Nev. 2012). Construing the allegations in the complaint in the light most favorable to Plaintiffs, the Court agrees.

Plaintiffs filed their first complaint in this case on June 2, 2023. (ECF No. 1.) Plaintiffs allege that on September 6, 2021, Schomer "expressed his intent to bring a lawsuit against the Sheriff's Office." (ECF No. 29-1 at ¶ 71.) They state that Schomer "sent a litigation and preservation hold letter to the jail on or around October 1, 2021." (*Id.* at ¶ 75.) Neither allegation mentions Medallus Defendants. The complaint does not state when Plaintiffs received Keaton's medical records, but it does allege that they did not receive video recordings of

jail surveillance until at least June 24, 2022. (*Id.* at ¶ 81.) Plaintiffs state that they received medical records on July 5, 2022. (ECF No. 37 at 7.) Both dates are within the one-year statute of limitations period.

Nothing in Plaintiffs' complaint irrefutably shows that they were on inquiry notice of their cause of action against Medallus Defendants at any point prior to receiving medical records. The Court therefore denies Defendants' motion to dismiss this claim.

**B. Medical Negligence Claims – Affidavit**

Defendants move to dismiss the same claims against Dr. Vacharothone for failure to satisfy the affidavit requirement of NRS 41A.071. (ECF No. 35 at 10.) Defendants argue that Kathryn J. Wild's declaration does not mention Dr. Vacharothone and does not identify any allegedly negligent medical care provided by her. (*Id.*)

NRS 41A.071 requires that a professional negligence action must be filed with an affidavit that: (1) supports the allegations contained in the action; (2) is submitted by a medical expert; (3) "[i]dentifies by name, or describes by conduct, each provider of health care who is alleged to be negligent;" and (4) "[s]ets forth factually a specific act or acts of alleged negligence separately as to each defendant in simple, concise and direct terms. NRS 41A.071. Defendants contest only the third and fourth requirements.

Here, the Wild declaration identifies Dr. Vacharothone by her first name, Rachot, thus satisfying NRS 41A.071(3). (ECF No. 1-1 at 7.) The declaration states: "On Sunday, August 29, 2021, Keaton demanded water, stating he was going to die. The Medical Assistant Bailey Powell was called in and started an IV which Keaton would not allow her to finish. He asked to go to the hospital. Dr. Rachot was notified of the situation, but no orders were given[.]" (*Id.*) Although not lengthy, this portion of the declaration sets forth the alleged act of negligence

by Dr. Vacharothone in simple, concise, and direct terms, thus satisfying NRS 41A.071(4).

The Court therefore denies Defendants' motion to dismiss the medical negligence claims against Dr. Vacharothone.

**C. Constitutional Claims**

Defendants move to dismiss Plaintiffs' constitutional claims, arguing that the allegations do not demonstrate deliberate indifference. (ECF No. 35 at 11.)[1]

The Ninth Circuit applies an "objective deliberate indifference" standard to Fourteenth Amendment claims alleging a pretrial detainee received inadequate medical care. *Gordon v. County of Orange*, 888 F.3d 1118, 1124–25. Under this standard, pretrial detainees alleging that failure to provide constitutionally adequate medical care must show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
> (ii) those conditions put the plaintiff at substantial risk of suffering serious harm;
> (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
> (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon*, 888 F.3d at 1125. Defendants argue that Plaintiffs cannot satisfy the third and fourth elements of the *Gordon* test because Keaton "refused all proffered medical care prior to his death." (ECF No. 35 at 13.)

Plaintiffs allege that when Keaton was showing signs of dehydration, Defendants joked about his condition rather than addressing it. (ECF No. 29-1 at ¶ 41.) Plaintiffs allege that medical Defendants "did not attempt to perform CPR or any other lifesaving measures on Keaton prior to the Elko City Fire Department arriving." (*Id.* at ¶ 60.) Plaintiffs allege that "Medallus Medical staff

---

[1] Defendants move to dismiss all constitutional claims, but only discuss deliberate indifference (counts 1 and 2).

[were] laughing and joking while Keaton lay dying on the cold concrete floor in the jail." (*Id.* at ¶ 63.) These allegations, viewed in the light most favorable to Plaintiffs, sufficiently show that Medallus Defendants did not take reasonable alternative measures to abate the serious risk of harm—such as earlier lifesaving measures. While Keaton may have refused earlier proffered medical care, there is no suggestion that he refused lifesaving measures in the hours before his death. Plaintiffs further allege that this failure to take reasonable available measures caused Keaton's injuries, including "death, excruciating pain, and extreme mental and emotional injuries." (*Id.* at ¶ 107.) These allegations are sufficient at this stage of the litigation to satisfy the requirements of *Gordon*.

The Court therefore denies Defendants' motion to dismiss Plaintiffs' constitutional claims.

## IV. CONCLUSION

The Court therefore orders that Medallus Defendants' motion to dismiss (ECF No. 35) is DENIED.

The Court further orders that Defendants' motion to extend time (ECF No. 38) is granted *nunc pro tunc*.

DATED: February 13, 2025

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

7